50 CCPA

## Application of Adolph P. ALEXANDER.

### Patent Appeal No. 6839.

United States Court of Customs and Patent Appeals.

Jan. 16, 1963.

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Judge MARTIN, pursuant to provisions of Section 294(d), Title 28 United States Code.

Smith, J., dissented.

George T. Mobille, Cushman, Darby & Cushman, Washington, D. C. (Paul O. Pippel, Floyd B. Harman and Henry L. Brinks, Chicago, Ill., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (George C. Roeming, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH and SMITH, Judges, Judge JOSEPH R. JACKSON, Retired, and Judge WILLIAM H. KIRKPATRICK.*

WORLEY, Chief Judge, delivered the opinion of the court:

WORLEY, Chief Judge.

Appellant seeks a patent on a method of nodularizing cast iron and the resulting product. The Board of Appeals affirmed the examiner's rejection[1] of claims 3 through 14, and 16 through 18 in appellant's application[2] entitled "Ductile Iron Casting" as being obvious in view of the prior art. Appellant asks us to reverse that decision.

Claims 4 and 16 of the appealed claims read:

"4. A method of producing an improved iron casting of the type

1. One claim was allowed.

2. Serial No. 625,298, filed November 30, 1956.

having in the as-cast condition free carbon agglomerated subtantially in nodular form dispersed in the matrix thereof comprising the establishing of a molten iron mix of hyper-eutectic composition and containing sulfur in an amount not exceeding 0.03 percent which molten iron if then cast would result in cast iron containing free carbon in flake form dispersed in the matrix thereof, introducing into said molten iron mix an effective amount to retain from 0.02 percent to 1 percent by weight in said improved iron casting of at least one nodular carbon impelling agent selected from the group of elemental metals consisting of lanthanum, samarium, praseodymium and neodymium and thereafter pouring said improved iron casting from the resulting molten iron composition.

"16. As an article of manufacture an improved iron casting containing uncombined carbon substantially in spherulitic nodular form dispersed in the matrix thereof, said improved iron casting having no sulfur in excess of 0.03 percent by weight and containing at least 0.02 percent and not more than 1 percent by weight of at least one element selected from the group of elemental metals consisting of lanthanum, samarium, praseodymium and neodymium as a nodular carbon impelling agent, said improved iron casting being re-meltable and re-cast while retaining said carbon in spherulitic nodular form without further addition of said nodular carbon impelling agent."

The application relates to a method of producing cast iron having its free carbon in nodular form, and the resulting products described as "nodular iron." The method involves adding to molten iron a small amount of one or more of the metals lanthanum, samarium, praseodymium and neodymium. That treatment of cast iron causes the carbon present

therein in flake form to coalesce into microscopic speroidal particles called nodules. It appears that the carbon, when present in the iron in flaked form, causes interruptions in the continuity of the metal matrix with resultant physical weakness; whereas, when the carbon is present in nodular form, such interruptions are lessened, resulting in a corresponding increase in the strength of the metal.

The single reference relied on is:

British patent 721,717 January 12, 1955.

That patent describes a method for improving the properties of cast grey iron by adding certain nodularizing agents. The general technique and purpose of nodularizing cast iron with many metals and alloys is acknowledged by the reference as having been common knowledge in the prior art. The main purpose of the patentee is to replace the expensive metals previously used, such as magnesium, with cheaper and less hazardous materials.

The following portions of the British patent were relied upon by both the examiner and the board, and seem to be the most pertinent:

"* * * It is believed that the calcium carbide reacts with the magnesium oxide to reduce it and free elemental magnesium, which then participates in the calcium carbide injection treatment to cause the subsequent formation of nodular iron.

"Other nodulization-impelling agents may be used instead of, or in addition to, the magnesium addition of Table IV. For example, rare earth metals, alloys, or compounds or mixtures thereof, such as alloys of lanthanum and the lanthanum series rare earth metals or mixtures of their oxides, may be used. * * *

* * * * * *

"It is believed that when the combination calcium carbide-rare earth oxide treatment is used, the carbide

reduces the oxide and frees the rare earth metal element, which then participates in the combination treatment to form the upgraded or nodular iron. *Thus, the rare earth metal itself could be used,* if desired, in combination with the calcium carbide to effect the combination treatment. * * *

* * * * * *

"The rare earth oxides as used with the present invention are believed to be reduced by the injected calcium carbide at the normal founding temperatures * * * to liberate cerium, lanthanum, and other rare earth elements. * * *" (Italics supplied.)

The issue is whether, when viewed in light of the entire disclosure of the British patent, it would be obvious to one skilled in the art to use lanthanum in metallic form as a nodulization-impelling agent.

In affirming the examiner's rejection the board stated:

"We have carefully considered appellant's arguments but we find no error in the Examiner's rejection. *The reference makes a clear and unequivocal statement that lanthanum and lanthanum series rare earth metals may be used as nodulization-impelling agents. We see no invention in actually employing these metals for this purpose and finding that they actually do function in the manner taught by the reference.* Claim 6 of the British patent specifies the use of lanthanum as a nodulization agent. (Italics supplied.)

* * * * * *

" * * * We are of the opinion that it would be obvious to one skilled in this art to employ alloys of lanthanum and other rare earth metals such as neodymium as nodulization-impelling agents in view of the fact that in the British patent alloys of lanthanum may be used. * * *"

Appellant argues that the board has misconstrued the teachings of the reference, i. e., that the patent discloses the use of lanthanum, *only in conjunction with calcium carbide,* without any teaching that the metal alone is usable as a nodulizing agent. He contends also that whatever teaching might exist is further obscured by the fact that the patentee "includes at least some materials, which when used alone (apart from calcium carbide and other agents) are relatively ineffective to produce nodular iron," citing the following from the reference:

"'The invention not only enables extremely small amounts of the rare earth nodulization-impelling agents to be used but also enables the rare earths to be used in their inexpensive, readily available, oxide form. Tests show that rare earth oxides when injected alone (the calcium carbide and other agents being omitted) are relatively ineffective."

It seems to us the interpretation of the reference by the board is correct. The British patent discloses that when rare earth metal oxides are used the calcium carbide functions to reduce the oxides to their elemental metallic form; the reference also teaches that in their elemental form the *metals* act as nodulization-impelling agents. Since the rare earth metals *themselves,* such as lanthanum and neodymium, are taught to be *active ingredients* in the nodulization process, the reference contains an adequate suggestion to one skilled in the art that the metals are useful by themselves as nodulization-impelling agents.

Appellant's argument that the teaching of the reference is obscured by the fact that it states that the metal oxides *alone* are *ineffective,* was adequately answered by the board:

"*We attach no patentable significance to the fact that* the reference uses the rare earth metal oxides in combination with calcium carbide, or that *the reference indicates that*

*these oxides are relatively ineffective when used alone. Appellant's rejected claims do not exclude the presence of other components such as calcium carbide.* It appears clear to us that it is the free metal, whether magnesium, cerium, lanthanum or other rare earth metal, which is the effective nodulization impelling agent. * * *" (Italics supplied.)

Full consideration has been given to all of appellant's arguments, including those regarding proportions and allegedly unobvious results, but we are unable to agree that the board erred in denying appellant's application.

The decision is affirmed.

Affirmed.

SMITH, Judge (dissenting).

In restating the provisions of 35 U.S.C. § 103, the majority opinion omits a requirement which I believe is of particular significance in reaching the correct decision in this case. This requirement is that, in applying the test of obviousness under section 103, *"the subject matter as a whole"* must be compared with the prior art *"at the time the invention was made."*

My first disagreement with the majority opinion arises from my application of the requirement of section 103 that we must look to the invention "as a whole." When this is done, I find two factors ignored by the majority. First, the background of this invention is highly technical and it relates to an art in which many of the metallurgical phenomena are not fully understood, and second, significant advances in this art may well be based on the simplification of existing processes and the use of critical amounts of specific materials in the cast iron composition. Appellant's invention "as a whole," it seems to me, is the simplification of prior known processes for the production of iron castings having properties which are particularly desired in

this art. Appellant's "invention as a whole" resides first, in his selection of specific materials to be added to the iron and second, the addition of these materials in certain stated amounts.

Disadvantages arising from the existing processes are discussed by appellant in his specification and underlie the problem which the present invention seeks to solve. Appellant's specification states:

"It is well known that if magnesium in amounts necessary to introduce from 0.04 to 0.5 percent in the casting or alternatively cerium in amounts necessary to introduce 0.05 to about 0.5 percent in the casting, or a combination of these two elements, are added to the molten base gray iron mix, the graphitic carbon will essentially coalesce or agglomerate to form nodules of carbon or graphite substantially spheroidal or spherulitic in shape which nodules are more or less disposed uniformly in the matrix of the casting. However, in the previously known cast irons of the nodular type there are several disadvantages existing both in the resulting products as well as the various known processes for making such castings. First there exists the danger associated with the use of magnesium or cerium because of the explosive characteristics of these elements when they are introduced into the molten iron. *Secondly, in all of the previously known processes the iron must be poured into casting within minutes after the nodular-impelling agent or agents are added. This is undesirable because the later poured castings* from a given ladle of molten iron *are of progressively poorer in characteristics* [sic] *than the castings poured earlier thus seriously impairing the control of uniform casting quality. Thirdly, nodular iron castings heretofore known do not retain the nodular graphite characteristics if the iron is re-melted and re-cast without further addition of a nodular im-*

*pelling agent.* This invention contemplates the production of uniform high strength nodular iron castings which overcome the aforementioned disadvantages." [Emphasis added.]

Following this discussion of the existing problem in this art, appellant states one of the objects of his invention to be the provision of nodular iron castings which in the "as cast condition" have the desired physical properties and:

"wherein the *physical properties of the castings are of uniform quality irrespective of the length of time elapsing between the time when the nodular impelling agent is introduced into the molten metal and the time of pouring the resulting castings.*" [Emphasis added.]

A second object of appellant's invention is also stated to be:

" * * * to provide nodular iron castings which may be re-melted and re-cast without the further addition of a nodular impelling agent wherein the re-cast product substantially retains its nodular characteristics."

My second disagreement with the majority opinion arises from my application of the second requirement of 35 U.S.C. § 103 that the "invention as a whole," which appellant provides in his specification, must be compared with the prior art as of "the time the invention was made" to determine *as of that time* whether there was an existing problem which remained to be solved and whether *at that time,* appellant's solution to this problem would have been "obvious." For this analysis it is adequate to turn to the cited prior art British Patent #721,717 which supplies the only evidence of record showing the state of this art prior to appellant's application.

In analyzing the state of the prior art as shown by this reference, there are significant portions other than those portions quoted in the majority opinion. It seems to me that this reference fairly teaches to one skilled in this art that the addition of calcium carbide to the molten cast iron will improve certain of its properties. The calcium carbide may be added alone or it may be added with magnesium or magnesium oxide prior to casting. The teaching is clear that such a casting *if poured rather quickly* will have certain desired properties.

As stated in the reference:

"The method of the invention involves the injection of a predetermined amount of finely divided calcium carbide particles below the surface of a molten gray iron bath of selected composition *which is then promptly poured* to form upgraded or nodular gray iron castings." [Emphasis added.]

The importance of the "prompt" pouring required is then stated as follows:

" * * * The *time interval in minutes between the finish of the injection of calcium carbide and the casting (holding time) is found to be important. When said holding time is too large, the effect of the treatment is decreased.* The temperature of the molten metal at the time of injection is not critical, though it does have some effect on the holding time permitted; the temperatures conventionally used in founding are satisfactory." [Emphasis added.]

The British patent further discloses that the times referred to in the above-quoted portions of the specification were "three minutes" after injection of the calcium carbide in example 1, "about five miuutes after the injection of the carbide" in example 2. In discussing the results tabulated in Table II, the British Patent states:

" * * * The holding time, after the treatment of a 400 lb. induction melted heat poured with 60 lb. test ladles, *ranged from 2 to 6 minutes for the maximum improvements.*" [Emphasis added.]

The importance of the "prompt" pouring of the metal after the calcium carbide

treatment is emphasized in the British patent as follows:

"Upgrading is definitely obtained by introducing into the molten metal, finely divided calcium carbide alone, followed by casting into a suitable mould. The casting should be poured promptly after the carbide injection, *preferably within about 20 minutes.* Treatment with finely divided calcium carbide and magnesium oxide followed by *casting promptly* after the treatment, not only changes the relatively large graphite flakes to smaller, more compacted flakes, but produces some nodules, the degree of nodular structure varying from 10 to 90 per cent. of the total uncombined carbon. * * *"

It seems to me, therefore, that an important contribution which appellant first suggested to the art is that by using the claimed elemental metals in the stated amounts, he can increase the holding time of the molten metal before casting without impairment in the quality of the casting. One familiar with the practical problems in the operation of a gray iron foundry would appreciate, as did appellant, the importance of such a contribution. Thus, in summarizing his invention, appellant states:

"Summarizing it has now been shown that molten pig iron as tapped directly from a blast furnace may be immediately converted to nodular iron by a simple non-violent addition of lanthanum or neodynium or a combination of the two elements which iron may be cast into crankshafts for internal combustion engines, gears and the like *with uniformity in quality* of the castings and *without limitation of time elapsing between the addition of the nodular impelling agents of this invention and the casting into the mold.* * * *" [Emphasis added.]

Here, then, it seems to me is a wholly new and unexpected result which I do not find referred to in the majority opinion nor suggested in any art brought to our attention. It is this result among others which makes me pause and wonder whether on this record the claimed invention can be said to have been "obvious" to one of ordinary skills in this art. This unobvious result is attributed by appellant to the addition of the stated metals in their elemental form *in the stated proportions within the claimed ranges, which are given as critical.*

The prior art reference, it seems to me, teaches away from what appellant did and which he claims as his invention. While it is clear, as the majority has stated, that the British patent discloses that there is a *reaction between the calcium carbide and the added rare earth oxides* which results in the release of elemental metals from the oxides, it is equally clear that the reference does *not* indicate that the *elemental rare earth metals* are effective as nodular impelling agents. This is shown in the following excerpt, the emphasized portions of which were omitted in the majority opinion:

"It is believed that when the combination calcium carbide-rare earth oxide treatment is used, the carbide reduces the oxide and frees the rare earth metal element, which then participates in the combination treatment to form the upgraded or nodular iron. Thus, the rare earth metal itself could be used, if desired, in combination with the calcium carbide to effect the combination treatment. *As shown above only very small amounts of rare earth metal oxides are required in the combination treatment and similarly only extremely small amounts of rare earth metals need be added when used in combination with calcium carbide, and which amounts are insufficient by themselves to control the occurrence of any appreciable upgrading or significant amount of nodular graphite.*" [Emphasis added.]

A fair interpretation of the foregoing disclosure from the British patent, as of the time the present invention was made, would, it seems to me, force the conclusion that *the addition of the elemental metals alone would not be effective*. This is further made clear from the following statement in the reference:

" * * * The nodulization-impelling agents, *if in elemental or metallic form*, are preferably added to the molten metal either *simultaneously with the calcium carbide injection* or just subsequent thereto, and they may be injected in finely divided form and may be in admixture with the finely divided calcium carbide." [Emphasis added.]

It is to be noted also that the British patent does not specify any proportions of the elemental or metallic form of rare earth nodular impelling agents. There is, therefore, no teaching as to the amounts which appellant has taught the art are critical amounts and which he has claimed in the claims appealed. If, for example, we are to attempt to determine the amount of lanthanum *as an elemental metal* which the British patent would fairly suggest adding, appellant pointed out at the oral argument that this would constitute approximately .012% of the mixture of the rare earth oxides added in alloy No. 443, certain properties of which are reported in Table VI.

Another indication that the use of the rare earth metal oxides, as taught in the British patent, would not make appellant's use obvious in the critical amounts claimed is the fact that the amounts used, as stated in British patent, are such that:

" * * * With the combined carbide-rare earth treatment predominantly or substantially wholly nodular as-cast products can be produced with no magnesium added, *and the amount of rare earth retained is so small as not to be detectable by conventional analytical methods in the as-cast product*." [Emphasis added.]

As distinguishing from this disclosure of the British patent, appellant discloses the use of such amounts of the elemental metal that, as stated in the appealed claims, there is *retained in the improved iron casting* "from 0.02 percent to 1 percent by weight" of the nodular carbon impelling agent *as the elemental metal*.

I also note in passing that rejected claims 16, 17 and 18 are directed to appellant's improved iron casting as an article of manufacture. Claim 16 specifies that from 0.02 percent to 1 percent of the nodular carbon impelling agent is present. Claim 17 specifies these percentages as *percentages of elemental lanthanum*. Claim 18, however, specifies "at least 0.02 percent by weight of *metallic lanthanum* and not more than 1 percent by weight of *neodymium*" [emphasis added] as the nodular carbon impelling agent. Neither the majority opinion, nor the opinion of the board has satisfied me as to how these limitations are found in any of the disclosures of the British patent nor in what respect such percentages of the elemental metals retained in the casting would have been "obvious" therefrom.

It is true that, in mathematical terms, the amounts of the added materials present in the cast metal make it appear that these amounts are so small as to give rise to an impression that the differences in amount are minor. The fact remains, however, that in this art, the addition of minute amounts of the materials are critical and frequently such addition comprises a significant contribution when based on an understanding of an underlying problem, the solution of which gives rise to a wholly unexpected and unobvious result. Here, I find such a result in the unexpected extension of the holding times without impairment of the quality of the castings, which appellant attributes to the addition of the claimed amounts of the stated materials. As claimed in the rejected claims, it is necessary that the stated amounts of the nodular carbon impelling agents must be sufficient that there will *remain in the cast metal* the stated amounts of

the specified agents as elemental metals. I do not find this teaching in the British patent and am therefore unable to see how it can be said to be "obvious" therefrom. Certainly, the materials in the amounts claimed by appellant are not "obvious" from the British patent which teaches the use of the rare earth oxides in such small amounts that the elemental metals are not "detectable by conventional analytical methods in the as-cast product."

The foregoing reasons seem to me to require the opposite conclusion from that reached by the majority. I would therefore reverse the decision below.